UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FLOR ALVAREZ,

           Petitioner,

      v.

MOISES BECCERRA, et al.,

           Respondents.

No.  1:26-cv-00008 DC SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee proceeding through counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2241.  This action was referred to the undersigned by operation of Local Rule 302(c)(17) and 28 U.S.C. § 636(b)(1).  ECF No. 4.  For the reasons set forth below, the undersigned recommends that the § 2241 petition be denied.

## FACTUAL AND PROCEDURAL HISTORY

### I.        Petitioner's § 2241 Petition

Petitioner filed a § 2241 petition on January 2, 2026, alleging that she has been subject to immigration detention since August 2024 without any pending immigration court proceedings or identified statutory basis for custody.  Id. at 1-2.  She asserts that she has never been served with a valid Notice to Appear filed with the Executive Office for Immigration Review (the immigration court system), has never appeared before an Immigration Judge ("IJ"), and has never received a bond hearing.  Id. at 2, ¶ 8.

1

Petitioner did not include any evidence with the petition.  But according to its allegations, petitioner is detained at the California City Correctional Center, within this judicial district.  ECF No. 1 at 2, ¶ 2.  Petitioner suffers from depression and anxiety, is prescribed psychotropic medications, and alleges ongoing psychological deterioration in custody.  Id., ¶ 13.  On December 31, 2025, ICE officers approached her in detention and "attempted to pressure her to sign unidentified documents, refused to explain their contents or consequences, and asserted that a removal order allegedly exists, threatening removal without providing any timeframe or documentation."  Id. at 2, ¶ 9.  Petitioner refused to sign.  Id. at 2, ¶ 10.

The petition raises five causes of action: (1) Unlawful Detention in Violation of the Fifth Amendment; (2) Ultra Vires Detention Without Statutory Authority; (3) Prolonged and Indefinite Detention; (4) Interference with Right to Counsel and Coercive Conduct; and (5) Medical Neglect and Irreparable Harm.  ECF No. 1 at 3, ¶¶ 16-22.  Petitioner asks the court to grant the petition, order her immediate release, and enjoin Respondents from re-detaining her absent new, lawful authority established through proper judicial proceedings.[1]

**II.      Respondents' Return**

Respondents filed a return on January 13, 2026.  ECF No. 9.  Respondents explain that Petitioner is lawfully detained under 8 U.S.C. § 1231(a)(6) and received a bond hearing where an IJ determined she was a flight risk and a danger to the community.  Id. at 3-4.  Respondents further argue that because Petitioner is receiving the constitutional and statutory protections of the immigration removal process, the Court lacks jurisdiction to grant any additional relief.  Finally, Respondents assert that Petitioner is not entitled to habeas relief because her petition is unsupported by declarations or other evidence that demonstrate an injury has been suffered.  Id.

Respondents submitted four I-213 (Record of Deportable Alien) forms as exhibits that document Petitioner's immigration and criminal history since 2000.  See Declaration of J.

---

[1]  Petitioner filed a motion for temporary restraining order ("TRO") with her petition.  ECF No. 2. On January 5, 2026, District Judge Coggins denied the TRO without prejudice pursuant to Local Rule 231(b), which allows a court to "consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by [TRO]."  ECF No. 4.  Judge Coggins noted that although Petitioner "has been detained since August 2024," she does not "explain why she did not seek injunctive relief sooner."  Id.

Delaney, ¶ 2, ECF No. 9-1 at 1.  As represented on these forms, Petitioner received an order of removal on February 6, 2004, and has been removed to Mexico pursuant to that order multiple times.  ECF No. 9-2 at 9-10.  Her most recent removal was on May 28, 2015, following her conviction for illegal entry under 8 U.S.C. § 1325 for which she served 75 days in custody.  Id. at 10.

Respondents allege Petitioner last reentered the United States on July 1, 2015, without inspection, and remained in the country until her current detention.  Id. at 10.  That detention began on August 22, 2024, after ICE detained her after a traffic stop.[2]  Petitioner was administratively charged under INA § 212(a)(9)(C)(i)(I), which makes ineligible for admission "[noncitizens] unlawfully present after previous immigration violations" who have "been unlawfully present in the United States for an aggregate period of more than 1 year," and "who enter[] or attempt[] to reenter the United States without being admitted[.]"  Id. at 8.  Petitioner's order of removal was reinstated the same day she was detained.  Id. at 7.

Petitioner is in withholding-only proceedings.[3]  ECF No. 9-3.  The aforementioned IJ bond hearing occurred on February 25, 2025.  ECF No. 9-4.  The IJ denied Petitioner's request for custody redetermination pursuant to 8 C.F.R. § 1236, stating in full that "[t]he Court finds that the DHS met its burden of proof by clear and convincing evidence that the respondent is both a danger and a flight risk."  Id. at 2.  The IJ noted that the proceeding was a civil detention hearing under Aleman-Gonzales v. Barr, 955 F.3d 762 (9th Cir. 2020) ("Aleman"), rather than an INA § 236(a) [8 U.S.C. § 1226(a)] hearing.  Id.  Petitioner appealed the IJ's determination.  On July 11, 2025, the BIA summarily affirmed the IJ's ruling.  ECF No. 9-5.

**III.    Petitioner's Reply**

On reply, Petitioner submitted evidence to bolster her claim that her mental and overall health has declined during her more than 16-month civil detention.  ECF No. 10 at 1-2; id. at 7-38

---

[2]  Petitioner came to the attention of ICE pursuant to her arrest by the Oceanside Police Department on June 30, 2024.  ECF No. 9-2 at 9.

[3]  Respondents submitted a prehearing order issued by the IJ regarding these proceedings on December 17, 2025.  ECF No. 9-3.  The order does not specify the date of the hearing, and no information regarding those proceedings is available on EOIR's automated case information site.

(medical records). Petitioner also submitted evidence of a pending U Visa petition that she argues creates an incentive to comply with immigration proceedings and remain available to pursue relief. Id. at 3-4; 39-45 (U Visa documents). Petitioner again asks the court to order her release. Id. at 4. In the alternative, Petitioner now asks that the court order injunctive relief to remedy ongoing constitutional violations regarding her medical care. Specifically, she requests: (1) a physician evaluation (as opposed to merely nursing triage); (2) mental-health clinical evaluation; (3) a documented treatment plan with medication management and follow-up; and (4) production of updated medical records. Id. at 3-4.

### IV.      Respondents' Sur-reply

The undersigned construed petitioner's submission of additional evidence on reply as a motion to expand the record, granted that motion sua sponte, and gave respondents leave to file a sur-reply. ECF No. 11. Respondents filed their sur-reply on February 1, 2026, arguing that petitioner no longer contests the lawfulness of her detention but rather argues that it has been unconstitutionally prolonged and that she is entitled to better medical care. ECF No. 12 at 1. Respondents also distinguish this action from Zadydas v. Davis, 533 U.S. 678 (2001), in that petitioner is not in "removable-but-unremovable limbo" and point to the December 2025 scheduling order submitted with their answer to show her withholding-only proceedings are progressing. Id. at 2-3. Finally, respondents assert that petitioner is not entitled to habeas relief on her medical-related claims. They argue that medical conditions claims do not sound in habeas, and, regardless, the medical records petitioner submitted on reply show she is receiving medical care and do not support her allegations of deteriorating mental health. Id. at 4-6.

### LEGAL STANDARDS

### I.      Applicable Detention Statute

Petitioner insists throughout her petition that she is unlawfully detained without an identified statutory basis for custody. ECF No. 1. Respondents maintain that Petitioner is lawfully detained at the government's discretion pursuant to 8 U.S.C. § 1231(a)(6). ECF No. 9 at 3-4.

The detention of noncitizens who have been ordered removed from the United States is

4

governed by 8 U.S.C. § 1231(a).  "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022).  After the 90-day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those [DHS] determines 'to be a risk to the community'; and (4) those [DHS] determines to be 'unlikely to comply with the order of removal.'" Arteaga-Martinez, 596 U.S. at 578-79 (quoting 8 U.SC. § 1231(a)(6)).

The record shows that Petitioner's February 6, 2004, order of removal was reinstated on August 22, 2024, pursuant to 8 U.S.C. § 1231(a)(5).[4]  ECF No. 9-2 at 4, 7, 9-10.  "[A] reinstated removal order is administratively final." Padilla-Ramirez v. Bible, 882 F.3d 826, 831 (9th Cir. 2017) (citing 8 U.S.C. § 1231(a)(5)).  Therefore, at that point, Petitioner was subject to mandatory detention for a period of 90 days.  8 U.S.C. § 1231(a)(1)(B)(i), (2)(A).  After the expiration of the 90-day period, on or about November 20, 2024, the authority for Petitioner's detention shifted to § 1231(a)(6) by virtue of her being a noncitizen ordered removed who is inadmissible under INA § 212.  8 U.S.C. § 1231(a)(6); § 1182(a)(9)(C)(i)(I).  Although Petitioner is seeking relief through withholding-only proceedings, see ECF No. 9-3, her "reinstated removal order remains administratively final, [and s]he continues to be detained pursuant to § 1231(a)." Padilla-Ramirez, 882 F.3d at 832.  Accordingly, the undersigned agrees with respondents that petitioner is currently detained pursuant to § 1231(a)(6).

The Supreme Court examined the constitutional limits of discretionary detention under § 1231(a)(6) in Zadvydas, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]" 533 U.S. at 692.  Zadvydas read an

___

[4] Section 1231(a)(5) states: "If the Attorney General finds that a [noncitizen] has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the [noncitizen] is not eligible and may not apply for any relief under this chapter, and the [noncitizen] shall be removed under the prior order at any time after the reentry."

implicit due process limitation into § 1231(a)(6) in order to avoid serious constitutional problems. The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. In order to establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Supreme Court recognized a presumptively reasonable six-month period of detention. Id. at 701. If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

**DISCUSSION**

**I.    Due Process Claim**

Petitioner's first claim alleges her "prolonged and indefinite detention without a meaningful process is unconstitutional" under Zadvydas. ECF No. 1 at 3, ¶¶ 16-17. Petitioner asserts that "immediate release is required," and an order directing Respondents to hold another bond hearing "would improperly legitimize an ultra vires detention and prolong the constitutional violation." Id. at 3-4, ¶ 24. Respondents counter that petitioner has received the constitutional and statutory protections she is entitled to, namely the Aleman hearing before an IJ in February 2025, and that this court lacks the authority to order additional safeguards. ECF No. 9 at 3-4.

Petitioner's request for immediate release is based on her groundless assertion of ultra vires detention. She provides no authorities for the proposition that the due process requires the immediate release of a noncitizen subjected to prolonged detention under § 1231(a)(6) whom an IJ determined to be a flight risk and danger to the community. Further, petitioner's ongoing withholding only proceedings, standing alone, do not present Zadvydas issues warranting relief. See Prieto-Romero, 534 F.3d at 1063 ("Although [petitioner's] removal has certainly been delayed by his pursuit of judicial review of his administratively final removal order, he is not stuck in a 'removable-but-unremovable limbo,' as the petitioners in Zadvydas were.").

The undersigned then turns to the question whether due process requires that petitioner

receive some other relief.  Ninth Circuit precedent forecloses an *inherent* due process right to a second or successive bond hearing by virtue of petitioner's continued, prolonged detention. Rodriguez Diaz v. Garland, et al., 53 F.4th 1189, 1209-10 (9th Cir. 2022).  However, the undersigned does not read Rodriguez Diaz or other precedent as foreclosing individualized analysis as to whether such a successive bond hearing is necessary to satisfy due process, particularly where petitioner's nearly 18 months of detention has become notably prolonged.

In deciding what process is due to individuals detained by ICE, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies.  See Rodriguez Diaz, 53 F.4th at 1206-07 ("Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context.").  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

### A. Private Interest

Petitioner has a substantial private interest in her own personal freedom.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  Zadvydas, 533 U.S. at 690; see also Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011) (An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial.").  The strength of petitioner's private interest is somewhat diminished by her prior Aleman hearing.  Rodriguez Diaz, 53 F.4th at 1207 (9th Cir. 2022) (noting that "it is important not to overstate the strength of Rodriguez Diaz's showing under the first Mathews factor" where he previously received a bond hearing).  Still, on balance, given that nearly a year has passed since that custody redetermination hearing, this factor favors a finding that petitioner's private liberty interest is implicated by her ongoing detention.

If petitioner had substantiated her allegedly deteriorating health, that would demonstrate an additional interest in liberty from harsh conditions of confinement.  In a recent case, the undersigned found "credible information tending to show harsh conditions at California City" that

contributed to the petitioner's "reportedly deteriorating mental health" tipped the first Mathews factor in his favor. Tigranyan v. Warden of California City Det., No. 1:25-cv-1554 DJC SCR, 2026 WL 91765, at *6 (E.D. Cal. Jan. 13, 2026), report and recommendation adopted, No. 1:25-cv-1554 DJC SCR, 2026 WL 130843 (E.D. Cal. Jan. 16, 2026). The undersigned has similarly considered petitioner's medical evidence here but ultimately finds it has little impact on the first-factor analysis. For instance, while petitioner's medical records show some reports of anxiety, see ECF No. 10 at 29, 34, they do not reflect the "ongoing psychological deterioration" alleged in the petition. Moreover, plaintiff has received treatment for relatively minor conditions like skin pruritus, tooth pain, and seasonal allegories. See ECF No. 10 at 10-38.

## B. Risk of Erroneous Deprivation

The second Mathews factor is "the risk of an erroneous deprivation of [petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. "Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) (citing Zadvydas, 533 U.S. at 690-91); see also D. L.C. v. Wofford, No. 1:25-CV-01996-DC-JDP (HC), 2026 WL 25511, at *5 (E.D. Cal. Jan. 5, 2026) ("Civil immigration detention is 'nonpunitive in purpose and effect' and is justified when a noncitizen presents as a danger to the community or risk of flight.") (citing Zadvydas, 533 U.S. at 690).

The key, substantial fact in the government's favor is that the petitioner received an Aleman hearing on February 25, 2025, in which an IJ determined that the government had met its burden of establishing that petitioner was a flight risk and a danger to the community by clear and convincing evidence.[5] ECF No. 9-4. The question then is whether petitioner has presented

---

[5] In Aleman, the Ninth Circuit upheld the "construction of § 1231(a)(6) to require a bond hearing before an IJ after six months of detention for an alien whose release or removal is not imminent" with the government "bear[ing] a clear and convincing burden of proof at such a bond hearing to justify an alien's continued detention." Aleman, 955 F.3d at 766. The Supreme Court reversed Aleman on other grounds in Garland v. Aleman Gonzalez, 596 U.S. 543, 546 (2022). In a companion case decided that same day, Arteaga-Martinez, 596 U.S. 573 (2022), the Supreme Court rejected the Ninth Circuit's statutory interpretation of § 1231(a)(6), holding "there is no

8

evidence of materially changed circumstances in the year since that increase the risk of an erroneous deprivation of her liberty interest.

"[B]y definition the first justification—preventing flight—is weak or nonexistent where removal seems a remote possibility at best." Zadvydas, 533 U.S. at 690. Petitioner has not put forward evidence that her deportation is not foreseeable. As noted above, Petitioner's ongoing withholding-only proceedings do not, by themselves, render her detention indefinite. See Prieto-Romero, 534 F.3d at 1063. However, petitioner argues that her pending U Visa application "materially changes the equities and the risk analysis" in that she now has "every incentive to comply with proceeding and remain available to pursue lawful relief." ECF No. 10 at 2. Petitioner's evidence shows a U Visa application dated January 18, 2025, and communications reflecting agency activity on that application as recent as July 2025. Id. at 41-45. The undersigned is persuaded that Petitioner's pending U Visa application may materially change her risk of flight, thus increasing the likelihood of an erroneous deprivation of liberty absent a further detention hearing. See David G.M. v. Chestnut, No. 1:26-cv-0369 TLN CSK, 2026 WL 127613, at *2 (E.D. Cal. Jan. 17, 2026) (finding "persuasive Petitioner's argument that there is further mitigation of flight risk because he has a viable path toward immigration relief and a pathway to lawful permanent residence through his asylum application").

"The second justification—protecting the community—does not necessarily diminish in force over time." Zadvydas, 533 U.S. at 690. The factor "'most pertinent to assessing dangerousness' is 'the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." Martinez v. Clark, 124 F.4th 775, 783 (9th Cir. 2024) (quoting Singh, 638 F.3d at 1206). Here, unlike with flight risk, petitioner has not put forth any evidence of a material change in circumstances that may mitigate the IJ's February 2025 finding that she presented a danger to the community. Nor did petitioner

---

plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence that a detained noncitizen poses a flight risk or a danger to the community." Arteaga-Martinez, 596 U.S. at 581; see also Rodriguez Diaz, 53 F.4th at 1201 (recognizing that in Arteaga-Martinez, "the Supreme Court separately rejected [the Ninth Circuit's] statutory interpretation in Aleman").

address, let alone acknowledge, respondents' record regarding her criminal history, which includes a June 18, 2011, conviction for using the personal identity of another to obtain credit, goods, services, or medical information, and a November 7, 2022, conviction for child abuse. ECF No. 9-2 at 11-12.

Based on the absence of any evidence of a material change in circumstances that might counter the IJ's prior finding of dangerousness by clear and convincing evidence, the undersigned finds the risk of erroneous deprivation to be low. In other words, Petitioner has not offered a reason to believe the IJ's dangerousness determination might be different at a second bond hearing. Accordingly, while the undersigned is persuaded that petitioner's evidence may warrant a second bond hearing as to her flight risk, her failure to present mitigating circumstances as to dangerousness push the second factor in favor of the government.

### C. Government Interest

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. Higher courts have repeatedly recognized that, "[t]he government has an obvious interest in 'protecting the public from dangerous criminal [noncitizens].'" Rodriguez Diaz, 53 F.4th at 1208 (9th Cir. 2022) (quoting Demore v. Kim, 538 U.S. 510, 515 (2003)). This interest is somewhat mitigated here by the low fiscal and administrative burdens associated with a second bond hearing. See D. L.C., 2026 WL 25511, at *5 ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government." (quoting Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). But given the lack of changed circumstances relevant to the IJ's prior finding of danger, the government's interest in not having to convene successive detention hearings prevails.

Accordingly, after applying the Mathews factors, the undersigned finds that due process does not require a second bond hearing. This is not to say that the government may detain the petitioner indefinitely. Rather, based on the record before the court, and particularly the absence of any mitigating circumstances with regard to the IJ's prior finding of dangerousness, the undersigned finds that due process does not require additional procedural protections at this time.

10

## II.     Petitioner's Remaining Claims

Petitioner's four remaining claims are unavailing.  Petitioner's claim for ultra vires detention fails because, as discussed above, she is detained pursuant to 8 U.S.C. § 1231(a)(6). Further, her claim for "prolonged and indefinite detention" is duplicative of her due process claim and fails for the same reasons set forth above.

Petitioner's claim for interference with counsel and coercive conduct is based on the allegations that respondents "attempted to coerce signatures from Petitioner after counsel appeared, refused to explain the documents, and threatened removal."  ECF No. 2 at 11.  She maintains in the petition and TRO that these actions violated the guarantee to "meaningful and effective" habeas review as set forth by the Supreme Court in Boumediene v. Bush, 553 U.S. 723 (2008).  Id. at 11-12; ECF No. 1 at 3.  While troubling, the allegations are not supported by admissible evidence.  Further, petitioner does not explain how these actions interfered with meaningfully habeas review per Boumediene.  Respondents put forth evidence that allowed the undersigned to grasp the full picture of petitioner's current immigration proceedings.  The undersigned further ensured meaningful review by permitting petitioner's significant expansion of the record on reply after she failed to include evidence with her petition.  See Boumediene, 553 U.S. at 786 ("Federal habeas petitioners long have had the means to supplement the record on review[.]").  Accordingly, there is not a sufficient record on which to grant petitioner relief on her claim for interference with counsel and coercive conduct.

Finally, petitioner is not entitled to relief on her claim for "medical neglect and irreparable harm."  As discussed above in the context of the first Mathews factor, petitioner's medical records do not appear to reflect the extent of psychological deterioration alleged in the petition and on reply.  Moreover, the alternate relief petitioner requested on reply, i.e., that the court order "immediate physician and mental-health evaluation and treatment and any other narrowly tailored injunctive relief necessary to remedy ongoing constitutional violations," ECF No. 10 at 5, does not sound in habeas.  Nothing precludes petitioner from filing a standalone lawsuit under 28 U.S.C. § 1331 seeking injunctive relief to remedy medical care problems.  See Roman v. Wolf, 977 F.3d 935, 941 (9th Cir. 2020) ("Plaintiffs' due process claims arise under the Constitution,

11

and Plaintiffs invoked 28 U.S.C. § 1331, which provides subject matter jurisdiction irrespective of the accompanying habeas petition.  Moreover, an implied cause of action exists for Plaintiffs to challenge allegedly unconstitutional conditions of confinement.").  To be clear, as the Ninth Circuit noted in Pinson v. Carvajal, "the Supreme Court has left open the key question of whether there are circumstances when a challenge to the conditions of confinement is properly brought in a petition for writ of habeas corpus."  69 F.4th 1059, 1075 (9th Cir. 2023) (citing Ziglar v. Abbasi, 582 U.S. 120, 144-45 (2017) ("[W]e leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of confinement.")).  However, because Petitioner has not demonstrated extreme medical care problems, this is not a case where a distinct claim for release based on medical neglect can be sustained.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's petition for writ of habeas corpus (ECF No. 1) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 4, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE